UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
========================================

TREMONT RENAISSANCE HOUSING
DEVELOPMENT FUND COMPANY, INC.,
TREMONT RENAISSANCE LLC,
TREMONT RENAISSANCE AFFORDABLE LLC,
MASTERMIND DEVELOPMENT LLC, and
JOY CONSTRUCTION CORPORATION,                    Civ. Action No. 1:21-cv-02205-GBD

                         Plaintiffs,

v.

LEXINGTON INSURANCE COMPANY and
INTERNATIONAL INSURANCE COMPANY
OF HANNOVER SE,'

                         Defendants.
========================================


**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT**

Plaintiffs Tremont Renaissance Housing Development Fund Company, Inc., Tremont Renaissance LLC, Tremont Renaissance Affordable LLC, Mastermind Development LLC, and Joy Construction Corporation submit this memorandum of law in support of their motion for summary judgment pursuant to F.R.C.P. Rule 56(a).

Plaintiffs commenced this action seeking, *inter alia*, additional insured coverage from defendant Lexington Insurance Company ("Lexington") in connection with an underlying New York state court bodily injury action captioned <u>Gregory Weidtman v. Tremont Renaissance Housing Development Fund Company, Inc., Tremont Renaissance LLC, Tremont Renaissance Affordable LLC, Mastermind Development LLC, KZA Realty Group, Joy Construction Corp., Urban Precast, LLC, and Newburgh Iron LLC</u> (Sup. Ct. Bronx Co., Index No. 20106/2018E). Plaintiffs seek coverage from Lexington under a primary commercial general liability (CGL) policy and an excess liability policy issued to Urban Precast, LLC ("Urban Precast"). In <u>Weidtman</u>, underlying plaintiff Gregory Weidtman ("Weidtman") alleges he was injured in the course of his employment on a construction project owned/managed by plaintiffs Tremont Renaissance Housing Development Fund Company, Inc., Tremont Renaissance LLC, Tremont Renaissance Affordable LLC, and Mastermind Development LLC (collectively, the "Ownership Entities"). Plaintiff Joy Construction Corporation ("Joy") was the general contractor for the project. Joy subcontracted certain work involving the supply and erection of concrete planks work to Urban Precast, which in turn sub-subcontracted some or all of its work to Weidtman's employer, NYC Crane, Hoist and Rigging, LLC ("NYC Crane").

Despite due demand, Lexington has failed to provide additional insured coverage for plaintiffs in the underlying <u>Weidtman</u> action. Plaintiffs now move for summary judgment declaring they are entitled to defense and indemnification from Lexington as additional insureds

as a matter of law.

## FACTS

1.      **The Project**

At all relevant times, Tremont Renaissance Housing Development Fund Company, Inc., Tremont Renaissance LLC, and Tremont Renaissance Affordable LLC were, in combination, the owners of the premises at 4215 Park Avenue, Bronx, New York. See Lewis Aff. Ex. 1.[1] In 2015, Tremont Renaissance Housing Development Fund Company, Inc., Tremont Renaissance LLC, and Tremont Renaissance Affordable LLC contracted with Joy for Joy to be the general contractor for the construction of a residential housing complex at the premises. See Lewis Aff. Ex. 2.

On or about September 23, 2016, Joy entered into a subcontract with Urban Precast in connection with the project under which Urban Precast was the subcontractor for a scope of work including the supply and erection of concrete planks. See Lewis Aff. Ex. 3. The subcontract between Joy and Urban Precast contains certain indemnification and insurance provisions. In relevant part, the insurance provisions required Urban Precast to obtain a primary CGL policy and an excess liability policy with primary and non-contributory additional insured coverage for Joy and the Ownership Entities. Id.

On or about November 28, 2016, Urban Precast entered into a sub-subcontract with NYC Crane under which NYC Crane was to perform all or a part of Urban Precast's work under the Joy-Urban Precast subcontract. See Lewis Aff. Ex. 4. The contract required NYC Crane to obtain additional insured coverage under its CGL and excess liability policies for Joy and the Ownership Entities on a primary and non-contributory basis. Id.

---

[1]      All references herein to the "Lewis Aff." are to the August 1, 2022 Affidavit of Deborah Lewis in Support of Plaintiffs' Motion for Summary Judgment.

2.      **The Underlying Accident and Suit**

On November 30, 2017, Weidtman was allegedly injured in the course of his employment for NYC Crane on the project site when he fell from a height. See Lewis Aff. Ex. 5. On January 3, 2018, Weidtman filed suit against the Ownership Entities and Joy in New York Supreme Court alleging negligence and violations of the New York Labor Law. See id.; Lewis Aff. at ¶ 7. After being impleaded into the action by Joy and the Ownership Entities, Urban Precast filed a third-party action against NYC Crane on October 26, 2018. See Lewis Aff. Ex. 6. Urban Precast's third-party complaint alleges causes of action for, *inter alia*, common-law and contractual indemnification. Id.

On October 31, 2019, Weidtman amended his complaint to include Urban Precast as a direct defendant. See Lewis Aff. Ex. 5. The amended complaint alleges causes of action for negligence and violations of the New York Labor Law against all defendants in connection with the alleged accident. Id.

3.      **The RLI and Lexington Insurance Policies**

RLI Insurance Company ("RLI") issued a CGL policy to Joy that was in effect on the date of the underlying accident. See Lewis Aff. Ex. 7. RLI is defending Joy in the underlying Weidtman action. See Lewis Aff. at ¶ 7. RLI is also defending the Ownership Entities. Id.

Lexington issued CGL and excess liability policies to Urban Precast that were in effect on the date of the accident. See Lewis Aff. Ex. 8; Lewis Aff. Ex. 9. The Lexington CGL policy is subject to a $1 million per-occurrence limit.  The Lexington excess policy is subject to a $10 million per-occurrence limit.

As relevant to this action, the Lexington CGL policy contains an endorsement titled "Additional Insured Required by Written Contract" (Endorsement # 006), which states, in relevant

part:

**ADDITIONAL INSURED REQUIRED BY WRITTEN CONTRACT**

A.     **Section II – Who Is An Insured** is amended to include any person or organization you are required to include as an additional insured on this policy by a written contract or written agreement in effect during this policy period and executed prior to the "occurrence" of the "bodily injury" or "property damage."

B.     The insurance provided to the above described additional insured under this endorsement is limited as follows:

1.  COVERAGE A BODILY INJURY AND PROPERTY DAMAGE (Section I – Coverages) only.

2.  The person or organization is only an additional insured with respect to liability arising out of "your work" and "your product" for that additional insured.

\*     \*     \*

6.  Any coverage provided by this endorsement to an additional insured shall be excess over any other valid and collectible insurance available to the additional insured whether primary, excess, contingent or on any other basis unless a written contract or written agreement specifically requires that this insurance apply on a primary or non-contributory basis.

See Lewis Aff. Ex. 8. Under Section IV - Definitions, the Lexington primary policy defines "your work," in part, as: "Work or operations performed by you or on your behalf." Id.

The Lexington excess policy lists the Lexington primary policy as scheduled underlying insurance. See Lewis Aff. Ex. 9. Under Section V - Definitions, the Lexington excess policy defines "Insured," in part, as: "Any person or organization, other than the 'Named Insured', included as an additional 'Insured' under 'scheduled underlying insurance', but not for broader coverage than would be afforded by such 'scheduled underlying insurance'." Id.

The Lexington excess policy also contains an endorsement titled "Additional Insured Required by Written Contract" (Endorsement # 007), which states, in relevant part:

**ADDITIONAL INSURED REQUIRED BY WRITTEN CONTRACT**

4

    **A.**    **Section II - Who Is An Insured** is amended to include any person or organization you are required to include as an additional insured on this policy by a written contract or written agreement in effect during this policy period and executed prior to the "occurrence" of the "bodily injury" or "property damage."

    **B.**    The insurance provided to the above described additional insured under this endorsement is limited as follows:

    1.  COVERAGE A BODILY INJURY AND PROPERTY DAMAGE (Section I - Coverages) only.

    2.  The person or organization is only an additional insured with respect to liability arising out of "your work" and "your product" for that additional insured.

               \*   \*   \*

    6.  Any coverage provided by this endorsement to an additional insured shall be excess over any other valid and collectible insurance available to the additional insured whether primary, excess, contingent or on any other basis unless a written contract or written agreement specifically requires that this insurance apply on a primary or non-contributory basis.

Id. Under Section V - Definitions, the Lexington excess policy defines "your work," in part, as: "Work or operations performed by you or on your behalf." Id. The language of this endorsement is identical to the language of the "Additional Insured Required by Written Contract" endorsement in the Lexington CGL policy (Endorsement # 006), and the definition of "your work" is also identical in both policies.

On January 16, 2018, RLI issued a letter to Lexington on behalf of Joy and the Ownership Entities duly demanding that Lexington acknowledge additional insured coverage for Joy and the Ownership Entities in connection with the underlying accident and the Weidtman action under the Lexington primary and excess policies issued to Urban Precast. See Lewis Aff. Ex. 10. The letter advises Lexington of the undisputed fact that the accident arose out of the work Joy subcontracted to Urban Precast. Id.

On April 10, 2018, Lexington issued a letter to RLI denying additional insured coverage

for Joy and the Ownership Entities. <u>See</u> Lewis Aff. Ex. 11. The letter denies coverage on the basis

that Weidtman was an employee of NYC Crane, not Urban Precast, and that Urban Precast had

not (yet) been named as a defendant in the underlying suit. <u>Id.</u> The denial is also premised on an

endorsement in the Lexington primary CGL policy titled "Additional Insured - Owners, Lessees

or Contractors-Scheduled Person or Organization" (Endorsement # 009), which states, in part:

### ADDITIONAL INSURED - OWNERS, LESSEES OR CONTRACTORS-SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided by the following:

### COMMERCIAL GENERAL LIABILITY POLICY

### SCHEDULE

| Name of Additional Insured Person(s) Or Organization(s) | Location of Covered Operations |
|---|---|
| As required by written contract | As required by written contract |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations

A.    **Section II - Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

1.    Your acts or omissions or

2.    The acts or omissions of those acting on your behalf; in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

However:

1.    The insurance afforded to such additional insured only applies to the extent permitted by law; and

2.    If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

Id.

On April 16, 2019, defense counsel for Joy and the Ownership Entities re-tendered the defense and indemnification of Joy and the Ownership Entities to Lexington. See Lewis Aff. Ex. 12. The letter reiterates that Weidtman's accident had arisen out of the work subcontracted to Urban Precast by Joy. Id. It also cites Weidtman's testimony that at the time of the accident, Weidtman was acting as a crane signalperson due to Urban Precast's failure to provide one, and that Urban Precast's foreman had denied Weidtman's request for a harness. Id. The letter further cites Weidtman's testimony that his fall was caused after he was hit by a concrete plank that was under the control of two Urban Precast employees. Id. Upon information and belief, Lexington did not respond to this correspondence, even after Weidtman amended his complaint to include Urban Precast as a direct defendant in the underlying action.

To date, Lexington continues to refuse to provide additional insured coverage for Joy and the Ownership Entities in Weidtman, even as it defends and indemnifies its named insured, Urban Precast.

**4.      This Action**

On January 27, 2021, Joy and the Ownership Entities commenced this action in New York State Supreme Court seeking, *inter alia*, a declaration that Lexington must defend and indemnify them in Weidtman as additional insureds under the Lexington policies. On March 12, 2021, Lexington removed the action. See ECF Doc. 1.  On April 16, 2021, Lexington served its answer. See ECF Doc. 9.

Joy and the Ownership Entities now move for summary judgment because, as a matter of law, they are additional insureds under the Lexington CGL and excess policies entitled to defense and indemnification in Weidtman on a primary and non-contributory basis.

7

## ARGUMENT

**1.    Joy and the Ownership Entities Are Additional Insureds Under the Lexington CGL and Excess Policies**

As set forth above, the Lexington CGL policy issued to Urban Precast contains a blanket endorsement titled "Additional Insured Required by Written Contract" (Endorsement # 006), which states, in relevant part:

**ADDITIONAL INSURED REQUIRED BY WRITTEN CONTRACT**

A.    **Section II - Who Is An Insured** is amended to include any person or organization you are required to include as an additional insured on this policy by a written contract or written agreement in effect during this policy period and executed prior to the "occurrence" of the "bodily injury" or "property damage."

B.    The insurance provided to the above described additional insured under this endorsement is limited as follows:

1.    COVERAGE A BODILY INJURY AND PROPERTY DAMAGE (Section I - Coverages) only.

2.    The person or organization is only an additional insured with respect to liability arising out of "your work" and "your product" for that additional insured.

\*    \*    \*

6.    Any coverage provided by this endorsement to an additional insured shall be excess over any other valid and collectible insurance available to the additional insured whether primary, excess, contingent or on any other basis unless a written contract or written agreement specifically requires that this insurance apply on a primary or non-contributory basis.

See Lewis Aff. Ex. 8.

As also set forth above, the Lexington excess policy lists the Lexington CGL policy as scheduled underlying insurance, and it defines "Insured," in part, as: "Any person or organization, other than the 'Named Insured', included as an additional 'Insured' under 'scheduled underlying insurance', but not for broader coverage than would be afforded by such 'scheduled underlying insurance'." See Lewis Aff. Ex. 9. The Lexington excess policy also contains an endorsement

8

titled "Additional Insured Required by Written Contract" (Endorsement # 007) with language identical to the "Additional Insured Required by Written Contract" endorsement in the Lexington CGL policy set forth above. Id.

As a matter of law, Joy and the Ownership Entities qualify as additional insureds under the blanket "Additional Insured Required by Written Contract" endorsements contained in the Lexington CGL and excess policies. As required by the endorsements, Joy and Urban Precast entered into a written agreement under which Urban Precast was obligated to procure additional insured coverage for Joy and the Ownership Entities. See Lewis Aff. Ex. 3. Furthermore, there can be no dispute that the underlying accident arose out of Urban Precast's work for purposes of the endorsement, as underlying plaintiff Weidtman was working on the project in the course of his employment for Urban Precast's sub-subcontractor NYC Crane at the time of the accident. See Lewis Aff. Ex. 5.[2]

When used in an additional insured endorsement, the phrase "arising out of" is interpreted broadly.  It means simply "originating from, incident to, or having connection with" and requires "only that there be some causal relationship between the injury and the risk for which coverage is provided." Regal Const. Corp. v. National Union Fire Ins. Co. of Pittsburgh, PA, 15 N.Y.3d 34, 38 (2010). As set forth above, the Lexington CGL policy defines "your work," in part, as: "Work or operations performed by you or on your behalf." See Lewis Aff. Ex. 8.

 Under New York law, where an additional insured endorsement broadly applies to liability arising out of the named insured's work or ongoing operations, and where the underlying plaintiff

---

[2]	This is further reflected by the fact that Lexington itself in the course of defending Urban Precast has had Urban Precast file a third-party action against NYC Crane seeking, *inter alia*, contractual indemnification. See Lewis Aff. Ex. 6.

was an employee of the named insured or its subcontractor, defense and indemnification are owed as a matter of law. See Regal, *supra*, 15 N.Y.3d 34 (2010).

In Regal, construction manager URS sought additional insured coverage under prime contractor Regal's CGL policy in connection with an underlying suit brought by a Regal employee who had allegedly slipped on a floor joist recently painted by URS. The additional insured endorsement in Regal's policy provided coverage to URS "only with respect to liability arising out of [Regal's] ongoing operations." Id. at 38. The New York Court of Appeals held that the accident arose out of Regal's operations as a matter of law because the underlying plaintiff was an employee of Regal. Negligence or the lack thereof was immaterial: "Here, there was a connection between the accident and Regal's work, as the injury was sustained by Regal's own employee while he supervised and gave instructions to a subcontractor regarding work to be performed. That the underlying complaint alleges negligence on the part of URS and not Regal is of no consequence, as URS's potential liability for LeClair's injury arose out of' Regal's operation and, thus, URS is entitled to a defense and indemnification according to the terms of the CGL policy." Id. at 39.

Similarly, in Wausau Underwriters Ins. Co. v. Old Republic General Ins. Co., 122 F. Supp. 3d 44 (S.D.N.Y. 2015), a project owner filed a declaratory judgment action seeking additional insured coverage under the construction manager's policy for an underlying action arising out of a potential subcontractor's employee's accident during a visit to the project site. Under an endorsement with "arising out of" language, the Court held that the project owner was an additional insured entitled to defense and indemnification as a matter of law pursuant to Regal. Id. at 51-53. See also Admiral Ins. Co. v. American Empire Surplus Lines Ins. Co., 96 A.D.3d 585 (1st Dept. 2012); Hunter Roberts Const. Grp., LLC v. Arch Ins. Co., 75 A.D.3d 404 (1st Dept. 2010).

The blanket "Additional Insured Required by Written Contract" endorsements in the Lexington policies are the very same broad "arising out of" endorsements addressed in Regal and progeny. For purposes of the duty to indemnify, it is sufficient that Weidtman was an employee of Urban Precast's sub-subcontractor. Urban Precast's negligence or lack thereof is immaterial to the issue of additional insured coverage. Accordingly, Joy and the Ownership Entities are entitled to defense and indemnification from Lexington as a matter of law. Id.

## 2. Lexington's Scheduled Additional Insured Endorsement (Endorsement # 009) Does Not Apply

Lexington's denial of additional insured coverage also nominally rests on its reliance on the language of the CGL policy's "Additional Insured - Owners, Lessees or Contractors-Scheduled Person or Organization" endorsement (Endorsement # 009). See Lewis Aff. Ex. 11. This endorsement is a scheduled endorsement, meaning it applies to the additional insureds listed in the endorsement's schedule (as opposed to a blanket endorsement such as Endorsement # 006). See Lewis Aff. Ex. 8. Endorsement #009 does not amend, modify, delete, or supersede Endorsement # 006.

Obviously, Lexington has asserted that Endorsement # 009 is the applicable endorsement here because it contains a narrower scope of additional insured coverage than Endorsement # 006. The former applies to bodily injury "caused by" the named insured's "acts or omissions," whereas the latter applies to bodily injury "arising out of" the named insured's "work." In other words, Lexington is trying, *post hoc*, to escape Regal. It cannot do so.

"Under New York law, the initial interpretation of a contract 'is a matter of law for the court to decide.'" K. Bell & Assocs., Inc. v. Lloyd's Underwriters, 97 F.3d 632, 637 (2d Cir. 1996) (citing Readco, Inc. v. Marine Midland Bank, 81 F.3d 295, 299 (2d Cir. 1996)). "The court is to give the words and phrases in a contract their plain meaning, construe the contract to give full

11

meaning and effect to all its provisions, and avoid contract interpretations that render a clause superfluous or meaningless." Certified Multi-Media Solutions, Ltd. v. Preferred Contractors Insurance Company Risk Retention Group, LLC, 674 Fed. Appx. 45 (2d Cir. 2017).

Lexington's position that Endorsement # 009 applies here is legally untenable since it completely reads out Endorsement # 006. To credit Lexington's position would, in effect, permit Lexington to unilaterally and retroactively issue a new policy without Endorsement # 006 simply because the policy as issued provides coverage that Lexington, in the face of Weidtman, would rather not provide. Furthermore, even if, *arguendo*, the two endorsements were in conflict with each other, the policy would nevertheless as a matter of law be construed against Lexington and in favor of coverage. See Westchester Resco Co., L.P. v. New England Reinsurance Corp., 818 F.2d 2 (2d Cir. 1987); Reisman v. Coleman, 193 A.D.2d 659 (2d Dept. 1993); Eveready Ins. Co. v. Mazza, 208 A.D.2d 725 (2d Dept.1994); Syracuse University v. National Union Fire Ins. Co. of Pittsburgh, PA, 40 Misc.3d 1205(A) (Sup. Ct. 2013). Indeed, in another case where the policy at issue for some reason also contained both "caused by" and "arising out of" endorsements, this Court applied the latter endorsement to find a duty to defend and indemnify as a matter of law. See Wausau Underwriters Ins. Co., *supra*, 122 F. Supp. 3d 44 (S.D.N.Y. 2015); see also, cf. Starr Indemnity & Liability Co. v. Excelsior Ins. Co., 516 F. Supp. 3d 337 (S.D.N.Y. 2021).

In short, Endorsement # 006 applies. Since Joy and the Ownership Entities are entitled to defense and indemnification as a matter of law under Endorsement # 006, they are entitled to summary judgment. Lexington cannot use Endorsement # 009 as, in effect, an exclusion to vitiate coverage under Endorsement # 006.[3]

---

[3]     Even if, *arguendo*, this were a case in which the Court needed to consider extrinsic evidence to determine which endorsement applies, Endorsement # 006 would still apply as a matter of law. The best extrinsic evidence with respect to the issue of additional insured coverage under the Lexington policies is the subcontract between Joy and Urban Precast. See Travelers Prop. Cas. Co. of Am. v. Wesco Ins. Co., No. 20-CV-9888 (VEC), 2022 WL 376147,

3.    **Lexington's Coverage for Joy and the Ownership Entities Is Primary and Non-Contributory Under Both the CGL and Excess Policies**

As set forth above, the Lexington CGL and excess policies have identical "Additional Insured Required by Written Contract" endorsements.  The endorsements state:

> Any coverage provided by this endorsement to an additional insured shall be excess over any other valid and collectible insurance available to the additional insured whether primary, excess, contingent or on any other basis unless a written contract or written agreement specifically requires that this insurance apply on a primary or non-contributory basis.

Lewis Aff. Ex. 8 (Endorsement #006); Ex. 9 (Endorsement #007).

The Joy-Urban Precast contract expressly requires Urban Precast to obtain additional insured coverage for Joy and the Ownership Entities on a primary and noncontributory basis.  See Lewis Aff. Ex. 2. Accordingly, pursuant to the "primary and non-contributory" provisions in the Lexington policies, Lexington has the sole duty to defend Joy and the Ownership Entities. See Travelers Property Casualty Company of America v. Axis Ins. Co., 2022 WL 1807104 (S.D.N.Y. June 2, 2022); Mecca Contracting, Inc. v. Scottsdale Ins. Co., 140 A.D.3d 714 (2d Dept. 2016).[4]  For all of the same reasons, Lexington has the primary and non-contributory duty to indemnify Joy and the Ownership Entities under both the CGL and excess policies.  See Mecca.

---

at *7 (S.D.N.Y. Feb. 8, 2022).  The contract requires, *inter alia*, that "[c]overage is to be issued on a form at least as broad as ISO Form CGOOOI (2001) and must include Comprehensive Form, Premises, Operations Hazard, Broad Form Property Damage, Independent Contractors and Blanket Additional Insured Endorsement for 'Your Work.'" Lewis Aff. Ex. 3 at 21-22.

[4]    In addition to a declaration that Lexington must defend Joy and the Ownership entities going forward, Lexington must also pay the defense costs incurred to date on behalf of Joy and the Ownership Entities.  See, *e.g.*, Jenel Management Corp. v. Pacific Ins. Co., 55 A.D.3d 313 (1st Dept. 2008).  Following a decision and order in their favor on this motion, and per the Court's directives, Joy and the Ownership Entities will produce, subject to privilege, the invoices and payments for their defense in the underlying action for a hearing (if necessary) before the Court.

## CONCLUSION

For all of the foregoing reasons, plaintiffs are entitled to summary judgment:  (1) declaring that Lexington must defend and indemnify plaintiffs in <u>Weidtman</u> as additional insureds under the Lexington CGL policy; (2) against Lexington under the Lexington CGL policy for all amounts incurred for their defense in <u>Weidtman</u>; (3) declaring that their coverage under the Lexington CGL is primary and non-contributory; (4) declaring that Lexington must indemnify plaintiffs in <u>Weidtman</u> as additional insureds under the Lexington excess policy; (5) declaring that their coverage under the Lexington excess policy is primary and non-contributory; and (6) granting such other and further relief as the Court deems just and appropriate.

Dated:  October 11, 2022

Respectfully submitted,

DELAHUNT LAW PLLC


By:  _____s/_____
Timothy E. Delahunt
Bar Roll. No. TD-2791
*tdelahunt@delahuntpllc.com*

295 Main Street
Suite 836
Buffalo, New York 14203
Tel.: (716) 878-9178

*Attorneys for plaintiffs Tremont Renaissance Housing Development Fund Company, Inc., Tremont Renaissance LLC, Tremont Renaissance Affordable LLC, Mastermind Development LLC, and Joy Construction Corp.*