UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
===============================================

TREMONT RENAISSANCE HOUSING
DEVELOPMENT FUND COMPANY, INC.,
TREMONT RENAISSANCE LLC,
TREMONT RENAISSANCE AFFORDABLE LLC,
MASTERMIND DEVELOPMENT LLC, and
JOY CONSTRUCTION CORPORATION,        Civ. Action No. 1:21-cv-02205-GBD

                         Plaintiffs,

v.

LEXINGTON INSURANCE COMPANY and
INTERNATIONAL INSURANCE COMPANY
OF HANNOVER SE,'

                         Defendants.
===============================================

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT**

**MEMORANDUM OF LAW IN OPPOSITION TO LEXINGTON INSURANCE
COMPANY'S CROSS-MOTION TO DISMISS OR STAY**

## Table of Contents

1. Lexington Impliedly Concedes Its Liability ............................... 1

2. Lexington Does Not Fully or Accurately Describe the Procedural Posture With Respect To Hannover .......................................... 2

3. Lexington's Cross-Motion Is Untimely .................................... 3

4. Hannover Is Not a Necessary Party .......................................... 3

5. Priority of Coverage as Between Lexington and Hannover, Whatever It May Be, Is Immaterial to Plaintiff's Motion Against Lexington .................................................................................. 6

6. The Duty to Indemnify Issue Is Ripe and Must Be Decided in Favor of Plaintiffs as a Matter of Law ........................................ 7

7. Plaintiffs Are Entitled to Cover Under the Lexington Excess Policy .......................................................................................... 8

8. Century Surety Is Inapplicable................................................. 11

9. Abstention Is Inapplicable (If Not Improper) .......................... 14

10. Duty to Defend Issues .............................................................. 14

CONCLUSION ................................................................................. 16

# Table of Authorities

**Cases**

373 Wythe Realty, Inc. v. Indian Harbor Ins. Co.,
2010 WL 1930256 (E.D.N.Y. May 11, 2010) ...................................................................15

Albany Molecular Research, Inc. v. Schloemer
2010 WL 5168890 (N.D.N.Y. December 14, 2010)..........................................................14

Arch Specialty Ins. Co. v. Farm Family Cas. Ins. Co.
238 F. Supp. 3d 604 (S.D.N.Y. 2017)...................................................................................8

BP Air Conditioning Corp. v. One Beacon Ins. Group
8 N.Y.3d 708 (2007) ....................................................................................................2, 13

Buric v. Kelly
2003 WL 22990082 (S.D.N.Y. December 18, 2003) .........................................................14

Burlington v. New York City Transit Authority
29 N.Y.2d 313 (2017) ..........................................................................................................8

Century Surety Co. v. Metropolitan Transit Authority
2021 WL 4538633 (2d Cir. October 5, 2021).................................................11, 12, 13, 14

City University of New York v. Utica First Ins. Co.
211 A.D.3d 600 (1st Dept. 2022)........................................................................................15

Discovery Property & Cas. Ins. Co. v. Pathmark Stores, Inc.
2010 WL 4365561 (E.D.N.Y. October 27, 2010)...............................................................11

Farley v. State Farm Mut. Auto. Ins. Co.
167 A.D.2d 861 (4th Dept. 1990) .......................................................................................10

Harco Construction, LLC v. First Mercury Ins. Co.
190 A.D.3d 831 (2d Dept. 2021) ........................................................................................15

HBE Corp. v. Harleysville Group, Inc.
2015 WL 5750114 (S.D.N.Y September 30, 2015).............................................................8

Ins. Co. of N. America v. Liberty Mut. Ins. Co.
1994 WL 150818 (S.D.N.Y. April 19, 1994) ......................................................................8

Kingsway Realty, LLC v. Gemini Ins. Co.
2019 WL 1099751 (S.D.N.Y. March 8, 2019) ..................................................................15

Liberty Surplus Ins. Corp. v. Segal Co.
2004 WL 2102090, affd., 142 Fed. Appx. 511 (2d Cir. 2005) ..........................................10

Ohio Cas. Ins. Co. v. American Empire Surplus Lines Ins. Co.
2021 WL 7908052 (E.D.N.Y. April 14, 2021) ...................................................................5

Regal Construction Corp. v. National Union Fire Ins. Co. of Pittsburgh, PA
15 N.Y.3d 34 (2010) ..........................................................................................................1

State Farm Fire & Cas. Co. v. LiMauro
103 A.D.2d 514 (2d Dept. 1984), affd., 65 N.Y.2d 369 (1985) ........................................10

State Nat. Ins. Co. v. Certain Interested Underwriters at Lloyd's London
2022 WL 4547444 (S.D.N.Y. September 29, 2022)...........................................................6

State Nat. Ins. Co. v. Mt. Hawley Ins. Co.
2021 WL 1193208 (E.D.N.Y. March 29, 2021) .................................................................4

Technology Ins. Co. v. Philadelphia Indemnity Ins. Co.
2022 WL 17177852 (S.D.N.Y November 23, 2022)..........................................................5

Tomco Painting & Contracting, Inc. v. Transcontinental Ins. Co.
21 A.D.3d 950 (2d Dept. 2005) ........................................................................................11

Travelers Property Cas. Co. of America v. Wesco Ins. Co.
585 F. Supp. 3d 463 (S.D.N.Y. 2022).................................................................................5

U.S. Underwriters Ins. Co. v. Image By J&K, LLC
335 F. Supp. 3d 321 (E.D.N.Y. 2018) ..........................................................................8, 15

Vargas v. City of New York
158 A.D.3d 523 (1st Dept. 2018).........................................................................................8

Wausau Underwriters Inc. Co. v. Old Republic General Ins. Co.
122 F. Supp. 3d 44 (S.D.N.Y. 2015) ...................................................................................8

Wythe Realty, Inc. v. Indian Harbor Ins. Co.
2010 WL 1930256 (E.D.N.Y. May 11, 2010) ....................................................................2

Zurich American Ins. Co. v. Harleysville Ins. Co.
194 F. Supp. 3d 253 (S.D.N.Y. 2016).................................................................................8

Plaintiffs Tremont Renaissance Housing Development Fund Company, Inc., Tremont Renaissance LLC, Tremont Renaissance Affordable LLC, Mastermind Development LLC, and Joy Construction Corporation ("Joy") submit this memorandum as a reply in support of their motion for summary judgment against defendant Lexington Insurance Company ("Lexington"). Plaintiffs also submit this memorandum in opposition to Lexington's cross-motion to dismiss or stay.

Lexington's brief is a mélange of arguments premised on notions of joinder, prematurity, ripeness, mootness, and abstention. All of them are submitted with the objective of continuing to avoid the coverage obligation that Lexington has now avoided for five years. None has merit.

For the reasons set forth below and in their prior brief, plaintiffs' motion for summary judgment must be granted. For the numerous reasons stated below, Lexington's cross-motion to dismiss or stay must be denied.

**1.   Lexington Impliedly Concedes Its Liability**

In their prior brief, plaintiffs established that they are entitled to defense and indemnification as a matter of law based on the "arising out of" language in the Lexington endorsements at issue and pursuant to the New York Court of Appeals' decision in <u>Regal Construction Corp. v. National Union Fire Ins. Co. of Pittsburgh, PA</u>, 15 N.Y.3d 34, 38 (2010). Lexington does not and cannot dispute this. Rather, Lexington seeks only to further delay its coverage obligation to plaintiffs. As such, the only question in this case is not whether Lexington owes coverage to plaintiffs, but whether New York or federal law provides Lexington with some basis to withhold coverage. There is no authority whatsoever for a liability insurer in New York to withhold coverage from an insured where there is no dispute the coverage is owed. To the contrary, the New York Court of Appeals has made it clear that an additional insured is

immediately entitled to its coverage. An insurer that is obligated to provide coverage for an additional insured cannot withhold it until the underlying action is resolved, as to do so would be a windfall that defeats the contractual rights and expectations of the additional insured. See BP Air Conditioning Corp. v. One Beacon Ins. Group, 8 N.Y.3d 708 (2007); see also Wythe Realty, Inc. v. Indian Harbor Ins. Co., 2010 WL 1930256 (E.D.N.Y. May 11, 2010).

**2.  Lexington Does Not Fully or Accurately Describe the Procedural Posture with Respect to Hannover**

Lexington's primary argument to deflect and further delay its coverage obligation to plaintiffs is that the action cannot go forward without International Insurance Company of Hannover SE ("Hannover"). Lexington makes reference to a purported failure to timely serve Hannover, but this is not a full or accurate representation of the facts. Lexington implies that plaintiffs, Lexington, and the Court are, in effect, "waiting" for Hannover to appear in this action. This is not the case.

Plaintiffs did effect service on Hannover, and plaintiffs believe this service was proper. However, the fact of the matter is that Hannover has denied that the addresses on its own policy and available through the Excess Lines Association of New York are correct. Hannover knows of this action, is in actual possession of the complaint, and even had counsel engage the matter.[1] Nevertheless, Hannover did not appear in the action and continues to engage in evasive action. Lexington is aware of Hannover's refusal to appear (see Doc. 12; Doc. 15) but its brief merely refers to a purported "failure" by plaintiff to "timely serve" Hannover. However, by its cross-motion, Lexington is now attempting to piggy-back on Hannover's evasive tactics as basis to dismiss the action for Lexington's own benefit. Plaintiffs address this on the merits further below.

---

[1]  Attached hereto as Exhibits 1, 2, and 3 are documents reflecting plaintiffs' service on Hannover, as well as Hannover's actual knowledge of the action.

3. **Lexington's Cross-Motion Is Untimely**

The most direct way to dispose of Lexington's arguments is that they are too late. Lexington was at all times fully aware of plaintiffs' decision to dispense with attempting to have Hannover appear in this action (which Lexington removed) in favor of pursuing Hannover in state court. Lexington could not and did not oppose this. Moreover, Lexington had (and has) its own rights to pursue Hannover, but for some reason did not include a cross-claim in its answer (Doc. 9). If Lexington did not believe it was important enough to make a claim against Hannover in this action, it is untenable for Lexington to now use Hannover's absence as a *post hoc* basis to dismiss this action.

More to the point, Lexington's cross-motion to dismiss is untimely. The Court set October 11, 2022 as the deadline for dispositive motions. See Doc. 32. Lexington knew of plaintiffs' decision to pursue Hannover in a separate action since February 2022 (see Doc. 23) and did not oppose it. If Lexington had in good faith intended to make a motion to dismiss based on Rule 19, it could have and was obligated to make such a motion in compliance with the deadline. Moreover, in its requests for an extension of its time to oppose plaintiffs' motion, Lexington only requested extension of the opposition deadline. It made no reference to a cross-motion. See Docs. 38; 40.

4. **Hannover Is Not a Necessary Party**

Lexington's principal argument is that Hannover is a necessary party and that the action should be dismissed pursuant to F.R.C.P. 19. Lexington's argument fails on logic and is directly contrary to the law.

Complete relief can be accorded by the Court among the existing parties pursuant to Rule 19(a)(1)(A). Plaintiffs seek from Lexington only what is owed to them by Lexington, *i.e.*, defense and indemnification as additional insureds under the Lexington policies. The possibility that

3

another insurer (*e.g.*, Hannover) also owes defense and indemnification to plaintiffs is not a defense to Lexington's coverage obligations to plaintiffs. Priority of coverage among multiple insurers is a mechanism by which insurers order their respective obligations to a mutual insured. It is not a coverage defense. Cf. State Nat. Ins. Co. v. Mt. Hawley Ins. Co., 2021 WL 1193208 (E.D.N.Y. March 29, 2021). Lexington cannot avoid or forestall its contractual obligations to plaintiffs simply because plaintiffs (and Lexington) may have rights against other insurers. To argue otherwise is legally untenable because it implies that an insured cannot seek defense and indemnification from its own insurer unless it also names as a defendant other insurers that might owe additional insured coverage. This Court has very recently noted these well-established considerations of insurance law, which Lexington ignores:

> An insured which is the beneficiary of its own policy—issued as a primary policy—and a policy on which it is also an additional insured, can make a claim on either policy or both. It is not required to make a claim on the policy for which it is an additional insured. *See Royal Ins. Co. of Am. d/b/a Royal & Sunalliance v. Com. Underwriters Ins. Co.*, 2004 WL 2609522, at *6 (S.D.N.Y. Nov. 17, 2004) ("Generally, if 'two policies potentially apply to a loss, an insured can elect which of its insurers should defend and indemnify the claim by tendering its defense to one insurer and not the other.' " (quoting 14 Couch on Insurance 3d § 200.40)). If it provides notice of a claim to its own insurer, the insurer has a duty to pay on that claim even if—pursuant to an "other insurance" clause—some other policy might be primary to it. The insurer cannot decline coverage on the basis that, though its policy is primary, it is excess to some other primary policy nor, if it honors its insured's claim, can it recover from the additional insured the payments it has made pursuant to the insured's claim. *See ELRAC, Inc. v. Ward*, 96 N.Y.2d 58, 724 N.Y.S.2d 692, 748 N.E.2d 1, 8 (2001) (providing for an antisubrogation rule that an "insurer has no right of subrogation against its own insured for a claim arising from the very risk for which the insured was covered"). It is out of pocket. Its remedy is to seek implied indemnification from the other insurer. The insured's own insurer has "discharged a duty that is owed by [them]," but is "entitled to indemnity" as the additional insurer is primary and thus the duty "should have been discharged by the

4

[additional insurer]." *McDermott*, 428 N.Y.S.2d 643, 406 N.E.2d at 462.

Technology Ins. Co. v. Philadelphia Indemnity Ins. Co., 2022 WL 17177852, *19 (S.D.N.Y November 23, 2022) (all brackets in original; footnote omitted); see also Ohio Cas. Ins. Co. v. American Empire Surplus Lines Ins. Co., 2021 WL 7908052 (E.D.N.Y. April 14, 2021).

In addition to disregarding the applicable law, Lexington's arguments do not pass muster on their face. In the course of its other erroneous contentions and arguments, Lexington incorrectly states that plaintiffs are asserting "conflicting primary and non-contributory obligations against both Lexington and Hannover." Doc. 42 (page 16.)[2] Lexington also argues that the claims for coverage against Lexington and Hannover are "inconsistent." Id. (page 17). However, plaintiffs' claims against Lexington and Hannover obviously do not conflict. Plaintiffs are entitled to coverage from both insurers. Plaintiffs' claims for coverage against Lexington and Hannover are cumulative. They are not made in the alternative, nor are they conditional or contingent on each other in any way.

Lexington also asserts that deciding the action in Hannover's absence would invite "inconsistent results." Id. However, there is zero possibility of inconsistent results for all of the reasons stated above. Lexington's contractual obligations arise from its policy alone. Hannover's contractual obligations arise from its policy alone. Plaintiffs are entitled to their coverage under both policies. Lexington's relief here (if it has any) with respect to Hannover is to bring its own suit against Hannover seeking implied indemnification among insurers. See Technology, *supra*; see also, *e.g.*, Travelers Property Cas. Co. of America v. Wesco Ins. Co., 585 F. Supp. 3d 463 (S.D.N.Y. 2022).[3] Lexington could have sought that relief in this action by way of a cross-claim,

---

[2]   All references to page numbers are to the ECF pagination.

[3]   Whether using the legal term "implied indemnification" or some other term, actions by one insurer against another where the two insurers have a common insured by way of additional insured coverage are common and routine

but it chose not to.  The possibility that Lexington might commence its own separate action against Hannover for that purpose is the exact equivalent of plaintiffs commencing their state court action against Hannover.  Neither has any connection to Rule 19.  Moreover, Lexington's claim that plaintiffs would be "rewarded" (Doc. 42 at 17) if the action proceeds against Lexington is not only incorrect legally but baseless factually inasmuch as Lexington cannot dispute that it owes plaintiffs coverage but has refused to provide it.

Nor does Rule 19(a)(1)(B) apply in Lexington's favor.  A judgment declaring that Lexington owes additional insured coverage to plaintiffs will not as a practical matter (let alone a legal matter) impair or impede Hannover's interests pursuant to Rule 19(A)(1)(B)(i).  Hannover, like Lexington, retains the ability to litigate its coverage obligations to common insureds in a separate equitable contribution action.  A declaration that Lexington owes additional insured coverage to plaintiffs does not touch or concern Hannover's obligations to plaintiffs or Lexington, which is solely a matter of the contents of the Hannover policy, which is its own separate contract. See State Nat. Ins. Co. v. Certain Interested Underwriters at Lloyd's London, 2022 WL 4547444 (S.D.N.Y. September 29, 2022).

Nor does Rule 19(a)(1)(B)(ii) apply here, for all of the same reasons.  In this action, plaintiffs seek only what Lexington owes them.  As noted above, the possibility that Hannover also owes coverage to plaintiffs is not a defense for Lexington.  In addition, this Court's declaration that Lexington owes additional insured coverage will do nothing to affect Lexington's rights as against Hannover as a coinsurer.

**5.    Priority of Coverage as Between Lexington and Hannover, Whatever It May Be, Is Immaterial to Plaintiffs' Motion Against Lexington**

---

in New York.  There are numerous such reported cases in both the New York state and federal courts, and there is no reason to burden the Court with a laundry list of exemplar citations.

Lexington devotes a portion of its brief (Doc. 42 at 18-20) to setting forth its analysis of priority between the Lexington and Hannover policies. However, as noted above, priority of coverage is not a defense to plaintiffs' claims under the Lexington policies. If the Court declines to address priority of coverage as between Lexington and Hannover, Lexington is free to litigate that issue in a separate action against Hannover.

It should further be noted that nowhere in its priority analysis does Lexington claim that its coverage for plaintiffs is not primary to Joy's own policies issued by RLI Insurance Company ("RLI"). Nor could Lexington make any such argument, as plaintiffs established in their prior brief that their coverage under the Lexington policies (primary and excess) is primary by operation of the express provisions of the Lexington additional insured endorsements. As such, Lexington's arguments are directed solely to how the Lexington and Hannover policies apply with respect to each other. If Lexington believes Hannover will not agree with Lexington's analysis, and if Lexington wishes to bind Hannover to a judgment on priority of coverage, it can commence an action against Hannover.

**6.    The Duty to Indemnify Issue Is Ripe and Must Be Decided in Favor of Plaintiffs as a Matter of Law**

Lexington argues that the issue of its duty to indemnify plaintiffs is premature because there has not been a determination of plaintiffs' liability in the underlying action. First and foremost, Lexington is simply wrong on the facts. Plaintiffs were found liable to underlying plaintiff Gregory Weidtman in 2022. See Exhibit 4 hereto.

Furthermore, even if Lexington did not disregard the decision on plaintiffs' liability in the underlying action, it is also again wrong on the law. The New York Court of Appeals has held that under a broad "arising out of" endorsement, there is a duty to indemnify an additional insured as a matter of law where the underlying plaintiff is an employee of the named insured or one of its

7

subcontractors.  See Regal, *supra*.  This Court does not depart from this.  See Wausau Underwriters Inc. Co. v. Old Republic General Ins. Co., 122 F. Supp. 3d 44 (S.D.N.Y. 2015).  In cases involving liability coverage, the New York courts (state and federal) will determine the duty to indemnify as a matter of law when an underlying action is pending where, as here, findings in the underlying action are not required.  See, *e.g.*, Arch Specialty Ins. Co. v. Farm Family Cas. Ins. Co., 238 F. Supp. 3d 604 (S.D.N.Y. 2017); U.S. Underwriters Ins. Co. v. Image By J&K, LLC, 335 F. Supp. 3d 321 (E.D.N.Y. 2018); Zurich American Ins. Co. v. Harleysville Ins. Co., 194 F. Supp. 3d 253 (S.D.N.Y. 2016); Ins. Co. of N. America v. Liberty Mut. Ins. Co., 1994 WL 150818 (S.D.N.Y. April 19, 1994); HBE Corp. v. Harleysville Group, Inc., 2015 WL 5750114 (S.D.N.Y September 30, 2015).

In contrast, pursuant to the New York Court of Appeals' decision in Burlington v. New York City Transit Authority, 29 N.Y.2d 313 (2017), a court will not decide the duty to indemnify an additional insured where the endorsement is a narrower "caused by" endorsement, and where issues of negligence or lack thereof have yet to be decided in the underlying action.  Cf. Vargas v. City of New York, 158 A.D.3d 523 (1st Dept. 2018).  However, such cases are inapplicable here and are of no avail to Lexington given that it issued policies with broad "arising out of" coverage.

7.     **Plaintiffs Are Entitled to Coverage Under the Lexington Excess Policy**

Lexington's contention that plaintiffs are not insureds under the Lexington excess policy is also incorrect for multiple reasons.

First, Lexington claims plaintiffs do not automatically qualify as insureds under the excess policy's definition of the term "Insured."  Under "Section V - Definitions," the Lexington excess policy defines "Insured," in part, as: "Any person or organization, other than the 'Named Insured', included as an additional 'Insured' under 'scheduled underlying insurance', but not for broader

8

coverage than would be afforded by such 'scheduled underlying insurance'." See Doc. 48-3 (page 22). Lexington argues that plaintiffs are not insureds under the excess policy because that would mean plaintiffs would receive coverage "broader" than that provided under the Lexington primary policy. The argument is nonsensical on its face because it treats "breadth" as if that term meant limits. However, if "breadth" meant limits, then no additional insured under the primary policy would ever qualify as an insured under the excess policy because the limits of the primary policy are (obviously) limited to the primary policy. Breadth as used in "Section V" can only meaningfully refer to the substantive breadth of the coverage of the primary policy. Since the primary policy provides additional insured coverage to plaintiffs on a broad "arising out of" basis, they are entitled to the same coverage under the excess policy.

Second, even without regard to "Section V," plaintiffs would qualify as insureds under the excess policy based on the additional insured endorsement in the excess policy. That endorsement states, in part:

> **A.** **Section II - Who Is An Insured** is amended to include any person or organization you are required to include as an additional insured on this policy by a written contract or written agreement in effect during this policy period and executed prior to the "occurrence" of the "bodily injury" or "property damage."

Id. (page 42).

Lexington argues that plaintiffs do not qualify as insureds under this endorsement because the contract between Joy and Urban Precast, LLC ("Urban Precast") does not obligate Urban Precast to obtain additional insured coverage for plaintiffs "on this policy" (*i.e.*, the excess policy). However, this is also incorrect. The excess insurance requirement of the contract states:

> e) Umbrella/Excess Liability coverage with minimum limits of $5,000,000 for all coverages outlined in the Commercial General

9

>   Liability, Automobile Liability and Employers Liability insurance requirements.

Doc. 34-4 (page 23).

The coverages outlined in the "Commercial General Liability" section include the requirement of additional insured coverage for plaintiffs. Lexington does not and cannot give a reason why that requirement is not incorporated for purposes of the excess policy by the paragraph quoted above. The incorporation language would be meaningless if it were otherwise.

Lexington then argues that a declaration with respect to the excess policy is premature because the Lexington primary policy has not been exhausted. Lexington fails to cite any cases for this incorrect proposition. Courts routinely declare there is coverage under an excess policy prior to a settlement or verdict that exceeds primary limits. See, *e.g.*, Liberty Surplus Ins. Corp. v. Segal Co., 2004 WL 2102090, affd., 142 Fed. Appx. 511 (2d Cir. 2005). There is no reason to distinguish an excess policy from a primary policy in this context. As established above, courts declare a duty to indemnify under primary policies where the underlying action remains pending. In such situations, there is no present duty to indemnify in the sense of an obligation to pay a settlement or judgment that does not yet exist. However, that does not preclude the New York courts from declaring that a duty to indemnify exists under the policy. The same holds true for all of the same reasons with respect to an excess policy. If, *arguendo*, there were any legal basis to treat primary and excess policies differently in this regard, it would only be where it is sufficiently dubious that the underlying exposure implicates excess coverage. See Segal; State Farm Fire & Cas. Co. v. LiMauro, 103 A.D.2d 514 (2d Dept. 1984), affd., 65 N.Y.2d 369 (1985); Farley v. State Farm Mut. Auto. Ins. Co., 167 A.D.2d 861 (4th Dept. 1990). That is not the case here, and Lexington would not argue to the contrary. Insureds facing a lawsuit are entitled to know if they

have excess coverage.  Cf. Discovery Property & Cas. Ins. Co. v. Pathmark Stores, Inc., 2010 WL 4365561 (E.D.N.Y. October 27, 2010).

Finally, Lexington asserts that plaintiffs are only entitled to $5 million rather than the actual $10 million policy limits of the excess policy.  Lexington argues that the excess policy "restricts the amount of coverage to the 'lesser of' the policy or the amount required in the underlying contract."  Doc. 42 (page 24).  Lexington then claims that the Joy-Urban Precast contract "only requires $5,000,000 in excess coverage."  Id.  The latter assertion, however, is incorrect.  The contract does not "only" require $5 million in excess coverage – it requires "minimum limits" of $5 million.  Doc. 34-4 (page 23).  Because the contract requires "minimum" limits of $5 million, it does not (as Lexington presumes) "require" limits of $5 million.  See Tomco Painting & Contracting, Inc. v. Transcontinental Ins. Co., 21 A.D.3d 950 (2d Dept. 2005).  Rather, the contract requires higher limits if Urban Precast obtains higher limits, which Urban Precast did.  The purpose of a contract using the term "minimum" is to secure the higher limits under a subcontractor's policy if the policy happens to have higher limits.  If the contract is not interpreted in that way, the use of the term "minimum" is meaningless.

**8.      Century Surety Is Inapplicable**

Lexington also extensively discusses the Court of Appeals' decision in Century Surety Co. v. Metropolitan Transit Authority, 2021 WL 4538633 (2d Cir. October 5, 2021), which Lexington characterizes as another purported basis for the Court to find this action to be premature or moot. Replying on Century, Lexington argues that the Court should abstain from determining Lexington's coverage obligation to plaintiffs because, according to Lexington, findings in the underlying action could render plaintiffs' claims moot.  Specifically, Lexington argues that if the contractual indemnification claims between and among the plaintiffs here, Urban Precast, and

11

NYC Crane, Hoist and Rigging, LLC ("NYC Crane") are decided the way Lexington assumes they will be, then priority of coverage would be eclipsed by the judgments on contractual indemnification claims.

However, Century is inapplicable here for reasons that are straightforward. In Century, the Court of Appeals found that an excess insurer was not entitled to have coverage paid under the rules of priority of coverage if its named insured would be found to owe contractual indemnification to an additional insured. In other words, the excess carrier was not permitted to reduce its payments on behalf of an additional insured by way of sharing with other mutual insurers where it was possible the additional insured would be able, by virtue of contractual indemnification, to execute a judgment directly against the named insured (thus directly implicating the named insured's coverage tower). The Court of Appeals also determined that the contractual indemnification claim could be heard and decided in the same action.

Neither of these holdings applies here. First, Lexington does not and cannot dispute that even under the rules of priority of coverage, both the Lexington primary and excess policies are primary to Joy's own policies. That was not the case in Century. Second, the excess insurer in Century had acknowledged that it owed additional insured coverage. It was instead trying to go on the offensive to reduce its coverage obligation by way of sharing with other insurers. Here, however, Lexington continues to deny that it owes additional insured coverage. As such, this action has always been – and remains – necessary and ripe. If Lexington were to concede that it owes defense and indemnification to plaintiffs on a primary basis, then – but only then – this action would be moot. But Lexington is still unwilling to do that, as evidenced by its opposition to

12

plaintiffs' motion, and also by its letter offering a defense to plaintiffs but refusing to indemnify them.[4]

Second, that part of Century finding that contractual indemnification claims can be heard in the same action as additional insured coverage claims is inapposite. The contractual indemnification claims were brought and remain *sub judice* in the underlying state court action. Lexington does not and cannot claim those claims can or should be heard in this action. Indeed, Lexington's argument (although incorrect) is premised on the fact that the contractual indemnification claims will be decided in the state court action. Thus, neither the letter nor the spirit of Century applies here, that being the Court's ability and willingness to hear coverage and contractual indemnification claims in one action in the interest of efficiency. Century does not state, suggest, or imply that a separate action for additional insured coverage that is ripe can or should be stayed while contractual indemnification claims that are *sub judice* in a separate action are litigated. Although Lexington does not come out and say it, its argument is, in actuality, that an additional insured that has been denied additional insured coverage cannot sue the disclaiming insurer for the coverage to which it is entitled. Under Lexington's argument, an additional insured must forego its additional insured coverage until the underlying action is litigated to conclusion. The New York Court of Appeals expressly rejected this idea years ago. See BP Air Conditioning Corp. v. One Beacon Ins. Group, *supra*, 8 N.Y.3d 708 (2007). Moreover, the Court of Appeals in Century was not trying to depart from the New York Court of Appeals. To the contrary, the Century Court's aim was to correctly predict how the New York Court of Appeals would rule. In

---

[4] As set forth above, once Lexington acknowledges or is ordered to acknowledge its obligation to defend and indemnify plaintiffs, it is free to pursue Hannover to share in that obligation. Plaintiffs offer no opinion on whether Century might apply in that instance. It is enough to note that it does not apply here.

13

short, Century does nothing to support Lexington's continuing evasion of its coverage obligations to plaintiffs.[5]

9.     **Abstention Is Inapplicable (If Not Improper)**

Again citing Century, Lexington also argues that "[a]bstention is warranted where an insurance coverage dispute is governed by state law and can be adequately addressed in a pending state court action." Doc. 42 (page 27). Century is not an abstention case, and Lexington's argument is manifestly meritless. First, this action is for additional insured coverage. Plaintiffs' claim for additional insured coverage is not part of the underlying action. This action is the only action in which the additional insured claims at issue will be litigated. Second, Lexington removed this action. As such, it is improper for Lexington to argue for abstention under federal law. Doing so would be a whipsaw tactic to use the removal statute and federal jurisdiction to insulate itself from a present and existing liability. See Albany Molecular Research, Inc. v. Schloemer, 2010 WL 5168890 (N.D.N.Y. December 14, 2010); cf. Buric v. Kelly, 2003 WL 22990082 (S.D.N.Y. December 18, 2003). If Lexington believes the New York state courts should decide the claims at issue, it should not have removed the action.

10.    **Duty to Defend Issues**

   A.    **The Duty to Defend Issue Is Not Moot**

Lexington argues that since it offered a defense to plaintiffs under a reservation of rights, plaintiffs' motion should be denied as moot with respect to the duty to defend. However, if plaintiffs are entitled to a defense from Lexington, which they are, then the proper course is to grant that part of plaintiffs' motion as unopposed.

---

[5]  Lexington's argument that NYC Crane's (future) liability for contractual indemnification should determine the disposition of this action also conspicuously ignores the possibility that NYC Crane's insurance limits would be insufficient to cover the total liability. This possibility is just one reason plaintiffs are entitled to have the security of their Lexington coverage in place regardless of how the contractual indemnification claims are eventually decided.

14

**B.      Recovery of Incurred Defense Costs**

Lexington also argues that plaintiffs do not have standing to recover the defense costs incurred by RLI on their behalf. Lexington cites no case supporting that proposition. New York law is directly to the contrary. See Harco Construction, LLC v. First Mercury Ins. Co., 190 A.D.3d 831 (2d Dept. 2021); City University of New York v. Utica First Ins. Co., 211 A.D.3d 600 (1st Dept. 2022). The New York federal courts rule consistently with this. An insurer (like Lexington) that invalidly denies a duty to defend an additional insured cannot avoid judgment on its incurred defense costs liability on the pretext that the additional insured's own insurer is not a party to the action. See Kingsway Realty, LLC v. Gemini Ins. Co., 2019 WL 1099751 (S.D.N.Y. March 8, 2019); 373 Wythe Realty, Inc. v. Indian Harbor Ins. Co., *supra*, 2010 WL 1930256 (E.D.N.Y. May 11, 2010); cf. U.S. Underwriters Ins. Co. v. Image By J&K, LLC, *supra*, 335 F. Supp. 3d 321 (E.D.N.Y. 2018).

15

## **CONCLUSION**

For all of the foregoing reasons, plaintiffs' motion for summary judgment must be granted, and Lexington's cross-motion to dismiss or stay must be denied.

Dated:  March 28, 2023                                              Respectfully submitted,

DELAHUNT LAW PLLC

By:     _____s/_____
          Timothy E. Delahunt
          Bar Roll. No. TD-2791
          *tdelahunt@delahuntpllc.com*

295 Main Street
Suite 836
Buffalo, New York 14203
Tel.: (716) 878-9178

*Attorneys for plaintiffs Tremont Renaissance Housing Development Fund Company, Inc., Tremont Renaissance LLC, Tremont Renaissance Affordable LLC, Mastermind Development LLC, and Joy Construction Corp.*